No. 12,018.

Genth *v.* Gardner.

Decided December 17, 1928.

Messrs. Nourse & Power, for plaintiff in error.

Mr. Clifford H. Stone, for defendant in error.

*Department Two.*

Mr. Justice Butler delivered the opinion of the court.

Sebastian Gardner, the defendant in error, obtained, as plaintiff below, a judgment requiring May P. Genth, the plaintiff in error, to convey and transfer to Gardner

an undivided one-half interest in certain land, improvements and personal property.

The complaint sets forth, in substance, the following facts: The plaintiff and the defendant entered into a "joint undertaking"—the word agreement is studiously avoided—"for the purpose of acquiring, owning, maintaining and operating a tourist and fishing resort on Spring Creek, in Gunnison county, Colorado." Between December 7, 1917, and September 1, 1926, the plaintiff, pursuant to such "undertaking," paid to the defendant "for use in so acquiring such tourist and fishing resort" a certain sum of money, and performed certain work worth a sum stated in the complaint. The "undertaking" contemplated the acquisition by the defendant from the United States of a homestead patent to the land. It was "understood"— the word agreed being avoided—that the "tourist resort undertaking" should be "a joint undertaking and each party thereto should contribute his and her earnings and necessary time for the acquisition of title to said land and the improvement of the same for such tourist resort, and that each party should be and become an equal owner therein." After this "joint undertaking" was entered into, the defendant, pursuant thereto, filed upon the land in her own name. The homestead patent was issued to her April 24, 1923. The money paid by the plaintiff to the defendant for the purpose of acquiring the homestead was used by the defendant for that purpose, and part of the labor performed by the plaintiff was such as the law requires to be done in order to acquire a homestead. The plaintiff also built, or did most of the work in building, three cabins, a cellar, a woodshed, and a garage. With the earnings of the business some furnishings and equipment for the cabins were purchased. The resort yielded no profit.

The defendant demurred to the complaint, the demurrer was overruled, and judgment was entered in favor of the plaintiff.

1. The Homestead Act provides (U. S. C. A., Title 43, sec. 162): ''Any person applying to enter land under the preceding section shall first make and subscribe before the proper officer and file in the proper land office an affidavit * * * that such application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person, persons or corporation; * * *; that he or she is not acting as agent of any person, corporation, or syndicate in making such entry, nor in collusion with any person, corporation or syndicate to give them the benefit of the land entered, or any part thereof, or the timber thereon; that he or she does not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for himself, or herself, and that he or she has not directly or indirectly made, and will not make, any agreement or contract in any way or manner, with any person or persons, corporation or syndicate whatsoever, by which the title which he or she might acquire from the Government of the United States should inure, in whole or in part, to the benefit of any person, except himself, or herself, and upon filing such affidavit with the register, on payment of five dollars when the entry is of not more than eighty acres, and on payment of ten dollars when the entry is for more than eighty acres, he or she shall thereupon be permitted to enter the amount of land specified.''

We have before us an agreement—calling it a ''joint undertaking,'' instead of an agreement, and saying that it was ''understood,'' instead of agreed, does not alter the real nature of the transaction—whereby the defendant, by perjury, was to obtain, and did obtain, a homestead patent in fraud of the government. The plaintiff and the defendant were to share equally in the fruits of this perjury and fraud. The plaintiff sues to have this agreement, undertaking or understanding specifically performed. He is not entitled to such relief. The court leaves both parties in the position in which they have

placed themselves. *Brown v. Kennedy,* 12 Colo. 235, 20 Pac. 696; *Everett v. Todd,* 19 Colo. 322, 35 Pac. 544; *Dameron v. Dingee,* 1 Colo. App. 436, 29 Pac. 305; *Baker v. Sockwell,* 80 Colo. 309, 251 Pac. 543; *Anderson v. Carkins,* 135 U. S. 483, 10 Sup. Ct. 905; *Bailey v. Sanders,* 228 U. S. 603, 33 Sup. Ct. 602; *Clark v. Bayley,* 5 Ore. 343; *Pacific Livestock Co. v. Gentry,* 38 Ore. 275, 61 Pac. 422; *In re Gromme's Estate,* 94 Cal. 69, 29 Pac. 487; *Harris v. McCrary,* 17 Idaho, 300, 105 Pac. 558; *Carroll v. Draughon,* 173 Ala. 327, 56 So. 207; *Dickson v. Taylor,* 129 Okla. 191, 263 Pac. 1102; *Shorman v. Eakin,* 47 Ark. 351, 1 S. W. 559.

In *Anderson v. Carkins,* 135 U. S. 483, 10 Sup. Ct. 905, Mr. Justice Brewer, delivering the opinion of the court, said (p. 488): "On the other hand, it is contended * * * that the affidavit of non-alienation is as clear an expression of the legislative intent as a direct prohibition; * * * that a contract whose consummation necessarily rests on perjury is illegal; that both purchaser and vendor are parties to the wrong, and that courts refuse to enforce such a contract, not from any regard to the vendor, but from motives of public policy; and finally, that courts of equity have always exercised a discretion in enforcing the specific performance of contracts to convey, and that it would be strange indeed if a court of equity lent its aid to enforce the performance of a contract founded upon perjury and entered into in defiance of a clearly expressed will of the Government. We think the latter reasoning correct, and that, whether the contract be absolutely void or not, it is so clearly against the will and policy of the Government, and so necessarily resting upon perjury, that a court of equity will have nothing to do with it."

2. The plaintiff's counsel says that, as the property was acquired with Gardner's money, there was a resulting trust in the plaintiff's favor, which he is entitled to enforce in this proceeding. The doctrine of resulting trusts has no application in a case such as this. *Dickson*

*v. Taylor, supra; Carroll v. Draughon, supra; Clark v. Bayley, supra; Shorman v. Eakin, supra.*

3. Counsel for the plaintiff urges that, in any event, paragraph 9 of the complaint is sufficient to defeat a general demurrer. That paragraph, in part, is as follows: "That there is located in the above described cabins certain articles of personal property belonging to plaintiff." If that means that the property belongs to the plaintiff by virtue of a resulting trust, we have seen that he cannot recover on the theory of a resulting trust. If it means that the property is his personal property and has no connection with the illegal transaction, this may be said: Whether the property consists of a pencil or two, or a necktie, or diamond rings, or a trunk, or other articles, and whether it is worth ten cents or a thousand dollars, the complaint does not inform us. There is no allegation of a demand for the possession of the property and a refusal of such demand; nor does it appear that such demand would be futile. Evidence was introduced in support of the complaint—what the evidence was does not appear—and the court found that the plaintiff has an equitable right to an undivided one-half interest in the real estate, improvements, furniture, and equipment; and ordered the defendant to execute a deed and bill of sale conveying and transferring such undivided one-half interest to the plaintiff. There was no finding in support of the allegation quoted from paragraph 9 of the complaint. This is equivalent to a finding that there is no article of personal property belonging to the plaintiff, in the sense in which counsel would have us understand the allegation. That allegation cannot save the judgment.

The judgment is reversed, and the cause is remanded with direction to dismiss the action. Neither party shall recover costs in this court or in the district court.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE DENISON, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.